UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| YOLANDA BISHOP, | ] |
| | ] |
| Plaintiff, | ] |
| | ] |
| vs. | ] 4:10-CV-0585-LSC |
| | ] |
| MICHAEL J. ASTRUE, | ] |
| Commissioner, | ] |
| Social Security Administration, | ] |
| | ] |
| Defendant. | ] |

MEMORANDUM OF OPINION

I.  Introduction.

The plaintiff, Yolanda Bishop, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Ms. Bishop timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Bishop was thirty-six years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a twelfth grade education, as

well as one or two months of training to be a surgical technician. (Tr. at 13.) Her past work experiences include employment as an apartment maintenance worker and a fast food worker. (*Id*.) Ms. Bishop claims that she became disabled on February 27, 2007, due to cervical pain, headaches, and bipolar disorder. (*Id*. at 136.)

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the

analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, subpt. P, Appendix 1.   20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant's impairments fall within this category, he or she will be found disabled without further consideration.  *Id.*  If they do not, a determination on the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.  20 C.F.R. § 404.1520(e), 416.920(e).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant can still do his or her past relevant work, the claimant is not disabled and the evaluation stops. *Id.*  If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step.  *Id.*  Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience in order to determine if he or she can do other work.

20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found that Ms. Bishop meets the nondisability requirements for a period of disability and DIB and was insured through September 30, 2007. (Tr. at 30.) He further determined that Ms. Bishop has not engaged in substantial gainful activity since the alleged onset of her disability. (*Id.* at 27.) According to the ALJ, Plaintiff's cervical disc rupture and bipolar disorder are considered "severe" based on the requirements set forth in the regulations. (*Id.*) However, he found that these impairments neither meet nor medically equal any of the listed impairments in Appendix 1, Subpart P, Regulations No. 4. (*Id.*) The ALJ did not find Ms. Bishop's statements concerning her impairments and disabling restrictions prior to September 30, 2007, to be totally credible (*Id.* at 31), and he determined that she has the following residual functional capacity: "sedentary work which allowed occasional pushing or pulling of her right upper extremity, occasional bending, stooping, climbing, turning her neck left to right and a temperature controlled environment." (*Id.* at 29.)

According to the ALJ, Ms. Bishop is unable to perform any of her past relevant work, and she is a "younger individual," as those terms are defined by the regulations. (*Id.* at 31.) He determined the Plaintiff has no transferable skills from any past relevant work. (*Id.*) The ALJ found that Ms. Bishop has the residual functional capacity to perform a significant range of sedentary jobs, such as assembler, tester, sampler, weigher, and surveillance system monitor. (*Id.* at 32.) The ALJ concluded his findings by stating that Ms. Bishop was not disabled on or before September 30, 2007. (*Id.*)

II.   Standard of Review.

The Court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d

1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is grounds for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

III.   Discussion.

Ms. Bishop alleges that the ALJ's decision should be reversed and remanded for three reasons.  First, she argues that the ALJ did not afford proper consideration of her subjective complaints of pain. (Doc. 8 at 2.) Second, Ms. Bishop contends that the ALJ did not properly consider "as part of the Residual Functional Capacity Assessment the level of pain documented by the medical evidence of record." (*Id.*) Finally, Ms. Bishop contends that the ALJ  failed to properly consider her treating physician's report and opinion. (*Id.* at 3.)

    A.   Ms. Bishop's Allegations of Pain.

Ms. Bishop asserts that she fulfilled the requirements of the Eleventh Circuit standard for establishing disability due to pain. (*Id.*) Specifically, she alleges that, "there is a medical condition or conditions documented in the medical evidence of record that could reasonably be expected to cause disabling pain..." (*Id.*) Subjective testimony of pain may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995).  To establish disability based upon pain, "the claimant must satisfy two parts of a three-

part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

When an underlying medical condition that could reasonably be expected to give rise to the claimed symptoms has been established, "the intensity, persistence and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities." Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996). Therefore, the adjudicator would evaluate the credibility of the claimant's "statements about the symptom(s) and its functional effects." (*Id.*)

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if he articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must

carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination ... cannot be made solely on the basis of objective medical evidence.") Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection which is not enough to enable the Court to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ found that there is evidence that establishes underlying medical conditions that could produce some pain and other limitations. (Tr. at 27.) However, the ALJ stated that "substantial evidence does not support a conclusion that the objectively determined medical conditions were of such severity prior to September 30, 2007, that they could reasonably be expected to give rise to disabling pain and other

limitations as alleged by Ms. Bishop." (*Id*. at 27-28.)  In reaching this conclusion, the ALJ considered the entire case record, including Ms. Bishop's subjective complaints of pain and statements provided by Dr. Stewart and Dr. Smith. Dr. Stewart treated Ms. Bishop for a short period of time. Because of the long commute to Dr. Stewart's office, Ms. Bishop was transferred to Dr. Smith.

The ALJ first discussed an assessment by Dr. Stewart. On November 1, 2007, Dr. Stewart examined Ms. Bishop and noted, "she now has a completely absent triceps jerk on the right arm with very substantial cervical radiculopathy into the interscapular area on the neck extension." (*Id*. at 277; see also *id*. at 28.) He suggested she take epidural steroids. (*Id*.) During another examination on December 11, 2007, Dr. Stewart observed that Ms. Bishop "exhibits a considerable amount of neck, shoulder and arm pain," and he recommended that she consider "sedentary work status such as desk based activities." (*Id*. at 276; see also *id*. at 28.) On January 8, 2008, Dr. Stewart indicated that he did not think Ms. Bishop was going to have a real long term problem with her shoulder and neck. (*Id*. at 275; see also *id*. at 28.)

The ALJ also considered the findings of Dr. Smith. A motor examination conducted in May 2008 by Dr. Smith found that Ms. Bishop had a "4/5 strength in her right upper extremity and 4+ abduction of her left shoulder, grip and elbow flexion and extension." (*Id*. at 28.) After examining Ms. Bishop, the only work restrictions given by Dr. Smith were "no lifting of greater than 20 pounds and no overhead activities." (*Id*.) Dr. Smith also determined that Ms. Bishop's reflexes in her upper extremities were good, her upper extremity motor strength was a 5/5, and most of her pain seemed to be coming from her muscles. (*Id*.) In fact, the ALJ specifically referred to a May 2008 examination of Ms. Bishop where she reported that electrical stimulation helped, and that her current pain was at a 6 out of 10, which is a moderate level. The ALJ further referenced examinations conducted in June 2008, August 2008, and September 2008, when Dr. Smith extended Ms. Bishop's work restrictions of "no lifting of greater than 20 pounds and no overhead activities." (*Id*.) The ALJ also considered Ms. Bishop's answer to a 2007 physical activity questionnaire, in which she stated that she had no problem standing, walking, or sitting. (*Id*. at 29.)

After considering the findings of Dr. Smith and the 2007 physical activity questionnaire, the ALJ determined that although Ms. Bishop's underlying condition is capable of producing some pain and limitations, Plaintiffs' objectively-determined medical condition cannot reasonably be expected to give rise to the level of pain claimed by Ms. Bishop. (Tr. at 27.) The ALJ specifically addressed Ms. Bishop's allegations of pain in his opinion, and he provided explicit reasons for rejecting her testimony. Substantial evidence supports the ALJ's conclusion that Ms. Bishop's condition did not cause disabling pain. (*Id.* at 28-29.)

      B.    Residual Functional Capacity Assessment.

Ms. Bishop claims that the ALJ did not properly consider the level of pain documented by the medical evidence of record as part of the RFC assessment. (Doc. 8.) "The determination for residual functional capacity is within the authority of the ALJ and the assessment should be based upon all of the relevant evidence of a claimant's remaining ability to do work despite her impairments." *Beech v. Apfel*, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000), *citing* 20 C.F.R. 404.1546, *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *see also* 20 C.F.R. 404.1545 (a)(3) ("We will also consider

results from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and section 404.1529.)").

After carefully examining the record and reasonably concluding that Ms. Bishop was not suffering from disabling pain on or prior to September 30, 2007, the ALJ determined Ms. Bishop's residual functional capacity. (Tr. at 29.) The ALJ properly considered statements provided by Ms. Bishop and limitations imposed by Dr. Stewart and Dr. Smith in determining her residual functional capacity. (*Id.* at 28-29.) Dr. Stewart noted that Ms. Bishop exhibited neck, shoulder, and arm pain, but still recommended sedentary work. (*Id.* at 276.) He also stated that he did not think Ms. Bishop would have a "real long term problem." (*Id.* at 275.) Dr. Smith examined Ms. Bishop numerous times, was well aware of her complaints of pain, and consistently gave her the same work restriction of not lifting greater than 20 pounds and no overhead activity. (*Id.* at 29, 287, 291, 295, 299, 304.)

Based on his examination of the record, the ALJ found that Ms. Bishop "retained the residual functional capacity to perform sedentary work which allowed occasional pushing or pulling of her right upper extremity,

occasional bending, stooping, climbing, turning her neck left to right and a temperature controlled environment." (*Id*. at 29.) The ALJ added that if Ms Bishop "complied with her assigned residual functional capacity, her pain and bipolar disorder were reasonably expected to impose no greater than mild to moderate functional restrictions upon her ability to engage in basic work activities described in 404.1521(b)." (*Id.*) It is evident the ALJ properly considered the level of pain documented by the medical evidence of record as part of the residual functional capacity assessment.

   C. Treating Physician's Diagnoses.

Finally, Ms. Bishop contends that the ALJ improperly evaluated Dr. Smith's opinion. A treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)) (internal quotations omitted). The weight to be afforded a medical opinion regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source

presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d). Furthermore, "good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (*citing Lewis*, 125 F.3d at 1440); *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991) (holding that "good cause" existed where the opinion was contradicted by other notations in the physician's own record).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability." 20 C.F.R. §§ 404.1527(e), 416.927(d). The Court is interested in doctors' evaluations of the claimant's "condition and the medical

consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440. Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, as it is the ALJ who bears the responsibility for assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R. § 404.1546(c).

In this case, "there is no doubt that Dr. Smith is and has been the plaintiff's treating physician." (Doc. 8 at 11.) According to the ALJ, if Dr. Smith's answers to the November 2008 questionnaire were credible, it would justify a conclusion that Ms. Bishop is disabled. (Tr. at 29.) Nevertheless, the ALJ found that the November 2008 assessment was inconsistent with Dr. Smith's repeated reports in his treatment notes. (*Id.*) In a number of Dr. Smith's treatment notes, his only work restrictions for Ms. Bishop were "no lifting greater than 20 pounds and no overhead activities." (*Id.* at 29, 287, 291, 295, 299, 304.) However, in the questionnaire, Dr. Smith claimed that Ms. Bishop would occasionally need rest periods during the day to walk about or lie down and she would likely have to miss three or more days per month from work. (*Id.* at 311.) Ms. Bishop has not pointed to anything in the medical record that justifies the change in prognosis found in the

questionnaire. *See, e.g., Jarrett v. Commissioner of Social* Sec., 2011 WL 1378108, 4 (11th Cir. 2011) (holding that good cause supports the ALJ's decision to not give controlling weight to a treating physician's questionnaire because it contradicted the doctor's own reports.); *see also Mills v. Commissioner of Social Sec.*, 396 Fed.Appx. 621, 623 (11th Cir. 2010) (stating that the ALJ's decision to disregard the doctor's statement was supported by good cause because the doctors "opinion was inconsistent with his own medical records and there was evidence to support a contrary finding."); *see also Kelly v. Commissioner of Social Sec.*, 401 Fed.Appx. 403, 407 (11th. Cir. 2010) (holding that the ALJ properly gave less weight to the doctor's opinion because it "departed substantially from the evidence in the record and was without support from the rest of the evidence of record.") Dr. Smith's November 2008 opinion is simply unsupported by the evidence in his notes and in the record. Because of this inconsistency, the ALJ correctly accorded less weight to Dr. Smith's November 2008 assessment. *See Crawford*, 363 F.3d at 1159-60; *Phillips*, 357 F.3d at 1240-41.

IV.     Conclusion.

Upon review of the administrative record, and considering all of Ms. Bishop's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

Done this 9th day of September 2011.

                                            _____
                                            L. SCOTT COOGLER
                                            UNITED STATES DISTRICT JUDGE
                                                                         167458